IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **JASON BAIRD,** )<br>       **Plaintiff,** )<br> )<br>**v.** )<br> )<br>**ANDREW SAUL,** )<br>**Commissioner of the Social** )<br>**Security Administration,** )<br>       **Defendant.** ) | 4:20-cv-00072-CLM |

## **MEMORANDUM OPINION**

Jason Baird seeks disability, disability insurance, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Baird's application in an opinion written by an Administrative Law Judge ("ALJ"). The Appeals Council then denied Baird's request to review the ALJ's opinion because Baird's new evidence was not chronologically relevant. Baird argues: (1) that the ALJ wrongly rejected opinion evidence from two consultative examiners, (2) that the Appeals Council erred in failing to review Baird's new evidence, and (3) that once the evidence submitted to the Appeals Council is considered, the SSA's denial of benefits is not supported by substantial evidence.

As detailed below, neither the ALJ nor the Appeals Council reversibly erred. So the court will **AFFIRM** the SSA's denial of benefits.

1

### I.      Statement of the Case

#### A.      Baird's Disability, as told to the ALJ

Baird was 46 years old at the time of the ALJ's decision. R. 74, 267. He graduated high school and attended college for one year. R. 87. Baird's past relevant work includes work as an auto service technician, machine tender, and general laborer. R. 101–02.

At the ALJ hearing, Baird testified that he fractured his wrist in 2009 and has had limited use of his right hand since then. R. 89–90. For example, Baird said that "a lot of times" he will drop his car keys or phone. R. 90. Baird also testified that he suffers from degenerative disc disease, spina bifida, and fibromyalgia. R. 92–93. And Baird claimed to have suffered four strokes. R. 93–95. Baird also said that he was on medication for anxiety and depression. R. 96.

Baird spends most of his day "lying down flat on [his] back." R. 99. And he stated that he can lift only up to five pounds. R. 98. Although Baird can do his own grocery shopping, he sometimes must use a mobility chair when doing so. R. 91. But Baird can drive to go get things that he and his disabled mother, who lives with him, needs. R. 87.

#### B.      Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| \ | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| | *Determine Residual Functional Capacity* | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C. Baird's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Baird applied for disability insurance benefits, a period of disability, and SSI in September 2016, claiming that he was unable to work because of various ailments, including obesity, right wrist fracture, degenerative disc disease, depression, anxiety disorder, spina bifida, and a history of strokes. After receiving an initial denial in January 2017, Baird requested a hearing, which the ALJ conducted in December 2018. The ALJ ultimately issued an opinion denying Baird's claims in January 2019. R. 59–74.

At Step 1, the ALJ determined that Baird was not engaged in substantial gainful activity and thus his claims would progress to Step 2. R. 63.

At Step 2, the ALJ determined that Baird suffered from the following severe impairments: obesity, right wrist fracture, degenerative disc disease, depression, and anxiety disorder. R. 63–64.

At Step 3, the ALJ found that none of Baird's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. R. 64–66. Thus, the ALJ next had to determine Baird's residual functional capacity.

The ALJ determined that Baird had the residual functional capacity to perform light work with these added limitations:

- Baird can never climb ladders, ropes, or scaffolds;

- Baird can only occasionally kneel, stoop, crouch, or crawl;

- Baird can frequently handle and finger with right upper extremity;

- Baird can never be exposed to workplace hazards, such as moving mechanical parts and high, exposed places;

- Baird must be limited to simple and routine tasks but not at a production rate pace;

- Baird has the ability to make simple work-related decisions;

- And Baird can tolerate occasional changes in the work setting.

R. 66–72.

At Step 4, the ALJ found that Baird could not perform his past relevant work. R. 72–73. At Step 5, the ALJ determined that Baird could perform jobs, such as ticket taker, cashier, and laundry worker, that exist in significant numbers in the national economy and thus Baird was not disabled under the Social Security Act. R. 73–74.

### D. The Appeals Council Decision

Following the ALJ's decision, Baird continued to receive treatment for chronic pain from Go Medical Group. R. 39–57. And in February 2019—one month *after* the ALJ's decision—Gayle Lombard, a nurse practitioner at Go Medical

Group, filled out a physical capacities form and mental health source statement for Baird. R. 33–34. According to Lombard, Baird would be off task more than 50% of the time during an eight-hour workday. *See id.*

Baird requested an Appeals Council review of the ALJ decision, based in part on Lombard's physical capacities form, the mental health source statement, and Go Medical Group treatment records from January to July 2019. The Appeals Council declined to consider the treatment records and forms from Lombard finding that these records do "not relate to the period at issue" and thus do "not affect the decision about whether you were disabled beginning on or before January 17, 2019" (*i.e.*, the date of the ALJ's decision). R. 2. Because the Appeals Council declined to consider this new evidence and found no other reason to review the ALJ's opinion, the ALJ's decision became the final decision of the Commissioner.

## II.   Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such

relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. Legal Analysis

Baird makes three arguments for why the SSA erred in denying his application for benefits. The first challenges the ALJ's handling of opinion evidence from Dr. Alvin Tenchavez and Dr. Mary Arnold, two consultative examiners. The second and third arguments relate to the Appeals Council's decision and work together: (a) the Appeals Council erred when it refused to consider Baird's current treatment records from Go Medical Group, the physical capacities form from Lombard, and the mental health source statement; and, (b) once this "new evidence" is considered alongside the evidence presented to the ALJ, the decision to deny benefits is not supported by substantial evidence. The court addresses each argument in turn.

### A. The ALJ properly evaluated the opinion evidence.

Baird's argument that the ALJ erred centers on the opinion evidence offered by Dr. Alvin Tenchavez, an internal medicine doctor who examined Baird in December 2016, R. 571–76, and Dr. Mary Arnold, a consultative psychologist who examined Baird in November 2016, R. 563–68.

Dr. Tenchavez diagnosed Baird with chronic low back pain, fibromyalgia, hypogonadism, generalized anxiety disorder, a history of prior cerebrovascular accident, obesity, and nicotine dependence. R. 574. Dr. Tenchavez's physical

examination revealed that Baird could heel, toe, tandem walk, and stoop and rise on the knees. R. 574. Dr. Tenchavez also found that Baird could make fists, oppose thumb to fingers, tie shoe laces, pick up small objects, button, hold a glass, and turn a doorknob. R. 574. And Baird had a normal range of motion except with his flexion and extension in his lumbar spine. R. 575–76. In assessing Baird's residual functional capacity, the ALJ afforded Dr. Tenchavez's diagnoses only partial weight but gave great weight to his objective findings. R. 69.

Dr. Arnold diagnosed Baird as suffering from major depressive disorder severe, without psychosis, and anxiety disorder, not otherwise specified. R. 568. She also assessed Baird a Global Assessment of Functioning score of 53, which reflects moderate symptoms of depression. *Id.* During their consultation, Dr. Arnold observed that Baird's behavior was conventional; that Baird presented with a depressed mood and at times tearful affect; and, that Baird was alert and oriented in all spheres. R. 566. The ALJ gave only partial weight to Dr. Arnold's diagnosis of severe major depressive disorder. R. 70.

Baird argues three ways that the ALJ erred in giving only partial weight to the diagnoses from Dr. Tenchavez and Dr. Arnold.

1. "Some measure of clarity" lacking: Baird first argues that the ALJ failed to provide "some measure of clarity" for why he gave Dr. Tenchavez's and Dr. Arnold's opinions only partial weight. An ALJ "must state with particularity the

8

weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Thus, "when the ALJ fails to state with at least some measure of clarity the grounds for his decision," it is inappropriate to affirm "simply because some rationale might have supported the ALJ's conclusion." *Id.* (quotations and citations omitted).

Here, the ALJ explained that he gave only partial weight to Dr. Tenchavez's diagnoses because the record contained "no evidence whatsoever of fibromyalgia or stroke and he relied on the claimant's self-described" history to make these diagnoses. R. 69. But the ALJ gave great weight to Dr. Tenchavez's objective findings, concluding that they were "consistent with the overall evidence that documents only some tenderness in [Baird's] lumbar spine." *Id.* The ALJ gave two reasons for giving Dr. Arnold's diagnosis of major depressive disorder only partial weight: (1) since Baird's visit with Dr. Arnold, Baird reported good control of his anxiety and no panic attacks, and (2) recent treatment notes documented no depression. R. 70.

The ALJ's explanation for the weight he assigned Dr. Tenchavez's and Dr. Arnold's opinion evidence provides enough particularity to understand the grounds for his decision. So the court finds that the ALJ met the Eleventh Circuit's requirement that he provide "some measure of clarity" for why he assigned Dr. Tenchavez's and Dr. Arnold's opinions only partial weight.

2. <u>"Degree of suspicion" standard should apply</u>: Baird next asks the court to apply a "degree of suspicion" standard to the ALJ's assignment of partial weight to the opinions from Dr. Tenchavez and Dr. Arnold. Baird bases his argument on the Seventh Circuit's opinion in *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995), in which the court treated with "a degree of suspicion" the ALJ's decision to reject the testimony of a consultative psychiatrist, who provided the only medical evidence of the claimant's mental health. Because the psychiatrist was the only disinterested expert to discuss the claimant's mental health, the Seventh Circuit determined that his testimony was entitled to considerable, but not conclusive, weight. *See id.*

This court declines to apply the "degree of suspicion" standard to the ALJ's assessment of the consultative examiners' opinion evidence for two reasons. First, the Eleventh Circuit has not adopted the "degree of suspicion" standard. *See Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. 2019). Instead, under the Eleventh Circuit's standards, the opinion of a one-time consultative examiner is not entitled to deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

Second, as the Commissioner points out, this case is distinguishable from *Wilder*. In *Wilder*, the consultative psychiatrist testified that the claimant suffered from disabling limitations. *See Wilder*, 64 F.3d at 336. Here, in contrast, neither consultative examiner offered an opinion on Baird's functional capacity. Instead, the opinion evidence that the ALJ gave only partial weight related to the consultative

examiners' diagnoses of Baird's impairments. So the court finds that—even if the Eleventh Circuit adopted *Wilder*'s analysis—*Wilder* does not apply to these facts.

Evaluating the ALJ's assessment of the consultative examiners' opinion evidence under the Eleventh Circuit's standards, the court finds that substantial evidence supports the ALJ's findings. As the ALJ pointed out, Dr. Tenchavez's report includes no basis for a diagnosis of fibromyalgia other than Baird's own report of having this condition. R. 69, 572. Dr. Tenchavez similarly stated that his diagnosis of a history of prior cerebrovascular accidents (or strokes) was "per patient." R. 574. And at the ALJ hearing, Baird's attorney admitted that he could find no medical records of the four strokes that Baird claims to have suffered. R. 95. Because neither Dr. Tenchavez's objective findings nor Baird's treatment records support these diagnoses, substantial evidence supports the ALJ's decision to give Dr. Tenchavez's diagnoses only partial weight. *See Huntley v. Soc. Sec. Admin. Comm'r*, 683 F. App'x 830, 833 (11th Cir. 2017) (affirming ALJ's decision to afford examining physicians' opinions little weight when they provided no explanation in support of their determinations, relied on claimant's subjective complaints, and their opinions were not supported by their medical examinations).

The ALJ's decision to give Dr. Arnold's diagnosis of severe major depressive disorder only partial weight is also supported by substantial evidence. Again, because Dr. Arnold is a consultative examiner, her opinions were entitled to no

11

deference. *See McSwain*, 814 F.2d at 619. And although Baird appeared profoundly depressed and tearful when Dr. Arnold examined him, R. 566, Baird's treatment notes reflect that his medications worked to control his anxiety disorder. R. 577, 585, 590, 595, 617. Plus, Baird's treating physicians repeatedly observed that he did not weep during examinations. R. 579, 583, 587, 593, 597, 608, 612. These medical records contain substantial evidence in favor of the ALJ's decision to give Dr. Arnold's diagnosis only partial weight.

In any event, the mere diagnosis of severe major depressive disorder does not establish that Baird has any particular functional limitations. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). And the ALJ: (1) found that Baird's depression and anxiety were severe impairments, (2) limited Baird to simple and routine tasks that are not at production rate, (3) restricted Baird to making only simple work-related decisions, and (4) stated that Baird could tolerate only occasional changes in the work setting. As the Commissioner notes, Baird does not argue, let alone establish, that Dr. Arnold's opinion, which contained no functional capacity assessment, warrants additional limitations.

3. <u>ALJ substituted his judgment for that of examiners</u>: Finally, Baird argues that the ALJ improperly substituted his judgment for that of Dr. Tenchavez and Dr. Arnold. Baird is right that "the ALJ may not make medical findings herself." *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016). But that's not what

the ALJ did. The ALJ resolved conflicting record evidence by assigning only partial weight to the diagnoses from Dr. Tenchavez and Dr. Arnold—which is the ALJ's proper role. *See Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984). So Baird's argument that the ALJ improperly substituted his judgment for that of the consultative examiners' judgment fails.

\* \* \*

In summary, the ALJ did not have to afford great weight to Dr. Tenchavez's and Dr. Arnold's opinions, and substantial evidence supports the ALJ's decision to assign their diagnoses only partial weight. So the court finds that the ALJ properly evaluated the opinion evidence from the consultative examiners.

### B.     The Appeals Council did not reversibly err.

Baird next argues that the Appeals Council erred when it denied his request for review. The Appeals Council will review an ALJ decision if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5).

1. Background: Baird has been a patient at Go Medical Group for several years (R. 98), and Baird continued to receive treatment at Go Medical Group after the ALJ issued his opinion on January 14, 2019. R. 39–57. During one of Baird's visits in February 2019—*i.e.*, one month after the ALJ issued his opinion—nurse practitioner

13

Lombard filled out a physical capacities form and mental health source statement on Baird's behalf. R. 33–34. These one-page forms required Lombard to check boxes, circle 'yes' or 'no', or fill in short blanks about various disability-related topics. *Id.*

According to Lombard's physical capacities form, Baird can stand for less than 15 minutes at a time and sit upright in a chair for less than 30 minutes. R. 33. Lombard also stated that Baird would: (1) "be lying down, sleeping, or sitting with legs propped at waist level or above" for 8 out of 8 daytime hours; (2) be off-task more than 50% of the time during an 8-hour workday; and (3) miss 12–18 days of work in a 30-day period. *Id.* Lombard then stated that Baird's "multiple bulging discs" caused these limitations and that the limitations existed back to June 1, 2015, Baird's alleged disability onset date. *Id.*

In the mental health source statement, Lombard said that Baird: (1) cannot "maintain attention, concentration and/or pace for periods of at least two hours"; (2) cannot "sustain an ordinary routine without special supervision"; and (3) cannot "adjust to routine and infrequent work changes." R. 34. And Lombard again concluded that Baird would be off-task more than 50% of the time during an 8-hour workday and miss 12–18 days of work in a 30-day period. *Id.* As with the limitations identified in the physical capacities form, Lombard stated that these limitations existed back to June 1, 2015. *Id.*

Baird presented his post-ALJ decision treatment notes from Go Medical Group, Lombard's physical capacities form, and Lombard's mental health source statement to the Appeals Council as "new evidence" to consider in the first instance. The Appeals Council denied Baird's request for review, concluding that none of this new evidence was chronologically relevant. Baird argues that this court should reverse the Commissioner's denial of benefits because (1) the Appeals Council failed to adequately evaluate whether it should consider this new evidence, and (2) the new evidence was both chronologically relevant and material.

2. <u>Chronological Relevance</u>: When the Appeals Council denies a request for review, it is "not required to give a . . . detailed explanation or to address each piece of new evidence individually." *See Hargress v. Soc. Sec. Admin. Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018). Instead, it is sufficient for the Appeals Council to state, as it did here, that it rejected a claimant's new evidence because the evidence "does not relate to the period at issue." *See id.* So Baird's argument that the Appeals Council failed to show that it adequately evaluated his new evidence lacks merit.

The court next considers whether the new evidence was chronologically relevant. "New evidence is chronologically relevant if it relates to the period on or before the date of the [ALJ's] hearing decision." *Id* (internal quotations and citations omitted). The Go Medical Group records relied on by Baird are dated from January 28, 2019 to July 29, 2019, which postdates the ALJ's January 14, 2019 decision. R.

15

39–57. And Baird has not pointed to anything within these treatment records that suggests that the information contained within them relates back to the relevant period. So the court finds that these records are not chronologically relevant.[1]

But Lombard did state in both the physical capacities form and mental health source statement that the limitations she described existed back to June 1, 2015 (*i.e.*, since Baird's disability onset date). R. 33, 34. Relying on *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317 (11th Cir. 2015), Baird argues that this shows that even though these evaluations occurred after the ALJ's decision, they are chronologically relevant. *See id.* at 1322–23 (recognizing that medical opinions issued after the ALJ's decision may be chronologically relevant if the opinions stem from medical records from the period before the ALJ's decision).

The Commissioner, however, argues that having Lombard merely check a box that says that Baird's limitations dated to June 1, 2015 is insufficient to show that Lombard based her opinions on Baird's past medical records. As the Commissioner notes, in *Hargress*, a more recent published opinion than *Washington*, the Eleventh Circuit found a similar check-the-box form chronologically irrelevant. *See Hargress*, 883 F.3d at 1310. Important to the court's decision in *Hargress* was that (1) the

---

[1] Even if these treatment records are somehow chronologically relevant, Baird has not shown that they are material. Go Medical Group records from the relevant period show the same clinical findings as those in the new treatment records. R. 577–634. And the ALJ referenced those records when assessing Baird's residual functional capacity. R. 67–68.

16

evidence did not show that the claimant's doctor evaluated her past medical records to fill out the physical capacities form, and (2) the doctor had not begun to treat the claimant until nearly two years after the date she said the claimant's limitations began. *See id.*

While it's a close call, the court finds that Lombard's submissions are more like the chronologically relevant opinion in *Washington* than the chronologically irrelevant physical capacities form in *Hargress*. When asked what condition caused Baird's limitations, Lombard responded "multiple bulging discs" and cited an MRI of Baird's spine in support of this conclusion. R. 33. The only MRIs in the record are from February 2016 and December 2017, R. 508, 614, which suggests that Baird reviewed medical records from the relevant period when filling out the physical capacities form. And unlike the claimant's treating relationship with her doctor in *Hargress*, Baird had been a patient of Go Medical Group for "several years" before the ALJ's hearing decision. *See* R. 98. Although the record is unclear as to when Lombard first examined Baird, Baird's medical records show that he had been seeing her since at least February 2017, R. 584, which was well before the ALJ's hearing decision in January 2019. Based on the length of Baird's relationship with Lombard, Lombard's apparent reference to an MRI from the relevant period, and Lombard's statements that Baird's limitations dated to June 1, 2015, the court finds the physical capacities form and mental health source statement to be chronologically relevant.

3. <u>Materiality</u>: That said, the Appeals Council does not have to consider chronologically relevant evidence if it is immaterial. "Evidence is material if a reasonable possibility exists that the evidence would change the administrative result." *Hargress*, 883 F.3d at 1309. Applying de novo review to the Appeals Council's failure to consider Lombard's submissions, *see Washington*, 806 F.3d at 1321, the court finds three reasons why Lombard's physical capacities form and mental health source statement are immaterial.

First, as a nurse practitioner, Lombard is not a medically acceptable source. *See* 20 C.F.R. §§ 404.1502, 416.902 (licensed advanced practice nurses are only acceptable medical sources for claims filed on or after March 27, 2017). So the ALJ wouldn't have to give any deference to Lombard's assessment of Baird's limitations. *See Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014).

Second, Lombard largely failed to explain why she concluded that Baird suffered from the limitations that she identified. Although Lombard stated that Baird had such extreme mental limitations that he would be off-task more than 50% in an 8-hour day and miss 12–18 days of work in a 30-day period, she pointed to no objective medical finding that supported these conclusions. R. 34. And the only basis Lombard provided for the physical limitations she identified was that Baird had multiple bulging discs as shown in an MRI of his spine. R. 33. But the mere existence of an impairment does not establish a claimant's limitations. *See Moore*, 405 F.3d at

1213 n.6. And the ALJ considered the MRIs of Baird's spine when assessing Baird's residual functional capacity and reasonably found that the images of mild disc bulging did not support disabling limitations. *See Eckert v. Comm'r of Soc. Sec.*, 152 F. App'x 784, 790–91 (11th Cir. 2005) (ALJ could discount subjective complaints of pain when objective imaging showed only mild to moderate stenosis). The court highly doubts that Lombard checking boxes and circling 'yes' or 'no' answers on the physical capacities form and mental health source statement would have changed the ALJ's opinion, which was based on a review of more detailed records. *See Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 881 (11th Cir. 2014) (Appeals Council did not err in denying review when doctor's answers to questionnaire were "conclusory and do not explain in any detail the reasons for his opinions").

Finally, Lombard's treatment notes do not support the opinions she put in the physical capacities form and mental health source statement. For example, a few weeks before she filled out the physical capacities form, Lombard noted that "[t]here [was] some improvement in the intensity of [Baird's] chronic pain" and that Baird had been able to do more activities of daily living and household chores. R. 35. During that same visit, Baird's psychiatric exam revealed no observed anxiety, delusion, loose associations, flight of thought, or weeping. R. 37. These observations contradict the extreme limitations that Lombard later circled or checked in the physical capacities form and mental health source statement. R. 33–34. So the court

finds that there is no reasonable possibility that the physical capacities form and mental health source statement would change the outcome of the ALJ's decision.

\* \* \*

In summary, no new evidence that Baird submitted to the Appeals Council was both chronologically relevant and material. So the Appeals Council did not err when it denied his request for review. Because the Appeals Council did not have to consider Baird's new evidence, the court need not address Baird's argument that the SSA's denial of benefits lacks the support of substantial evidence once the new evidence is considered. *See Hargress*, 883 F.3d at 1310.

## IV.  Conclusion

The ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision. And the Appeals Council did not err in denying Baird's request for review. So the SSA's denial of benefits is due to be **AFFIRMED**. The court will enter a separate final order that closes this case.

**DONE** this January 19, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE